*826 OPINION OF THE COURT

Per Curiam.

Judgment dated October 3, 1977 (Gold, J.) reversed without costs, and judgment is awarded in favor of the plaintiff in the amount of $850.
We resolve this appeal within the context of a companion action (Sidnam v Mason, App Term, Cal No. 92), decided simultaneously herewith. Plaintiff and another young woman were in search of an apartment and signed an application to lease prepared by a real estate broker, who is the defendant in the companion action. With regard to the plaintiff’s obligation to the broker, the application to lease provides: "If applicant [plaintiff] is successful in obtaining premises, a fair and reasonable fee for services rendered by the Broker is $510.00 payable in advance upon the applicant’s signing of the lease.” The lease was never signed. In the companion action the plaintiff sought, and this court has granted, the return of the broker’s commission which had been given in advance. Here, plaintiff seeks return of one month’s rent, in the sum of $425, and security, in the sum of $425, also given in advance. Consistent with the action involving the broker’s commission, the court holds in this action that the landlord must return the rent and security received by it from the prospective tenant.
The clause in the subject application to lease pursuant to which the plaintiff deposited one month’s rent and security, totaling $850, has been held, under very similar circumstances, not to, in and of itself, evidence a contract or meeting of the minds, but merely an offer to lease subject to acceptance by the lessee (Freedman v Washington Sq. Mgt. Corp., 19 Misc 2d 46; see, also, Hawley v State of New York, 22 AD2d 357). In Freedman v Washington Sq. Mgt. Corp. (supra), a deposit was held to constitute a trust fund pursuant to section 233 of the Real Property Law (now General Obligations Law, § 7-103), and the court concluded that where a lease was not executed the landlord was not permitted to retain such deposit as liquidated damages, notwithstanding a provision in the lease application for such retention as liquidated damages, unless the landlord rejects the application (see, also, Hawley v State of New York, supra).
The plaintiff reasonably concluded that she was not liable for the brokerage fee until she signed a lease, and she similarly conducted herself in negotiations with the landlord as if *827 she were not bound until she signed a lease. The assumption of the plaintiff that she was not liable for the broker’s fee, one month’s rent and security, albeit all paid in advance, until she executed a lease is amply justified under the circumstances herein.
It may well be that as a matter of strict agency law the broker is deemed the agent of the tenant rather than of the landlord. Actually, the tight market of residential apartments in fashionable neighborhoods dictates that the broker is more concerned with retaining the goodwill of the landlord and has closer ties with him than with prospective tenants. There are many prospective tenants but few apartments. The plaintiff’s negotiations with the Washington Square Realty Corp. were thus permeated by the manner in which the broker’s agent had initially framed the transaction through the agreement which she had prepared. While these young ladies were ingenuous, in view of the language of the application to lease, their belief that they were not legally committed is not unreasonable.
This situation is one which cries out for the invocation of subdivision 1 of section 235-c of the Real Property Law. It provides that the court may restrict the application of any agreement to lease so as to avoid an unconscionable result (Guterman v 985 Fifth Ave., NYLJ, Sept. 9, 1977, p 7, col 2).
When the Governor signed chapter 828 of the Laws of 1976 which became section 235-c, he undertook to furnish the reasons for this important legislation. He said, in part: "’The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risk because of superior bargaining power.’ This principle of fairness and restraint, which has been applicable to the area of sales for some time, should equally govern the conduct of the parties contemplating entering into the landlord and tenant relationship.” (NY Legis Ann, 1976, pp 406-407.)
The principle of this legislation had been judicially invoked before in a number of important landlord and tenant cases cited in the Governor’s message. A reading of the relevant cases, the statute and the Governor’s message clearly demonstrates that the "unconscionability” contemplated by the authorities should apply to the instant case.
Concur: Tierney, J. P., Riccobono and Asch, JJ.