In re Anthony M. BENTLEY, Debtor.

Anthony M. BENTLEY, Plaintiff,

v.

75 EAST END OWNERS, INC. and Church Management, a division of Peter Sharp & Co., Inc., Defendants.

Bankruptcy No. 81 B 10607 (PBA).
Adv. No. 82–6225–A.

United States Bankruptcy Court,
S.D. New York.

Dec. 17, 1982.

Sherman & Citron, P.C., New York City, for Anthony M. Bentley; Mitchell Greene, New York City, of counsel.

Hahn & Hessen, New York City, for defendants; Jerald E. Podair, New York City, of counsel.

## DENIAL OF DEFENDANTS' MOTION TO DISMISS COMPLAINT UNDER RULE 12(b)(6)

PRUDENCE B. ABRAM, Bankruptcy Judge:

Anthony M. Bentley ("Bentley"), the debtor herein, filed this Chapter 11 case on March 20, 1981. He owns and now occupies, and has owned since about 1975, a cooperative apartment, apartment 4M (the "Apartment"), at 75 East End Avenue, New York, New York. Bentley, a lawyer, served for a number of years as a member of the directors of the cooperative corporation. On June 29, 1981, Bentley was authorized to assume, without opposition, the unexpired proprietary lease for the Apartment as an executory contract. At the time of the assumption, Bentley was $9,163.50 in arrears in maintenance payments for the Apartment. Bentley entered into a stipulation of settlement with 75 East End Owners, Inc. (the "Lessor"), under the proprietary lease for the Apartment, which settlement was so ordered by the Court on the same day assumption was permitted. The stipulation provided that all maintenance charges were to be paid on a current basis; that the Lessor consented to the assumption; and that Bentley would reduce the arrears at the rate of $1,000 per month commencing July 15, 1981, but all arrears were to be paid before confirmation of any plan of reorganization. The arrearages have not been reduced at the agreed rate and a portion of the arrears are still outstanding.

Although a dispute exists as to Bentley's marketing efforts, there is no suggestion that the Apartment does not have a value substantially in excess of any amounts due the Lessor. In August, 1982, Bentley proposed to sell the Apartment to Dr. Russell M. Samson for $210,000 and obtain a two-year sublease for the Apartment, and thus continue in occupancy of the Apartment for the term of the sublease. The Lessor objected to the sale and sublease and refused through its Board of Directors to approve either the prospective purchaser or the sublease to Bentley. Bentley's major, if not sole, asset is his equity in the Apartment. Had the sale been approved and had a closing occurred, Bentley would apparently have been in a position to confirm the plan of reorganization he filed on April 19, 1982. At the hearing to consider the sale held on

September 21, 1982, the Honorable Joel Lewittes[1] refused to direct the Lessor or its Board to approve the proposed transaction.

Approximately 30% of the shares of Lessor continue to be owned by the sponsors[2] of the cooperative conversion and the apartments represented by those shares are rented, subject only to approval of the tenant by the managing agent for the building.

On October 12, 1982, Bentley commenced this adversary proceeding against the Lessor and Church Management, the managing agent. The complaint alleges that the proprietary lease "is unconscionable as drawn to the extent it allows such a mechanism to prevent the sale of debtor's assets" (Complaint, ¶ 8) and seeks relief under subsection 235–c of the New York Real Property Law (McKinney Supp.1982).

On October 18, 1982, prior to answering, defendants, as permitted by Bankruptcy Rule 712, filed a motion to dismiss the complaint on the grounds that it failed as a matter of law to state a claim upon which relief may be granted. Two affidavits were submitted by defendants in support of their motion and Bentley submitted an affidavit in opposition. Legal memoranda were also filed.

Rule 12(b) of the Federal Rules of Civil Procedure, applicable here through Bankruptcy Rule 712, provides as follows:

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

As both the plaintiff and defendant filed affidavits in connection with the motion to dismiss, this Court either must exclude the matters presented outside the pleadings or accept the affidavits and treat the motion as one for summary judgment. This Court is not certain that adequate notice has been given to warrant treating this as a motion for summary judgment. See *In re Bristol Industries Corp., General Motors Corp. v. Bristol Industries Corp.,* 690 F.2d 26 (2d Cir.1982). Nevertheless, because of the Court's view of the governing principles of law and, because the facts recited above to the extent not found in the four corners of the pleadings are undisputed, the Court does not view any useful purpose as being served by giving further opportunity for the filing of papers and treatment of this motion as one for summary judgment. The Court will therefore exclude the affidavits and treat this simply as a motion to dismiss.

Defendants urge that this action is barred by the six-year statute of limitations governing contract actions. Whether the correct commencement date is the date the proprietary lease was agreed to by Bentley, as urged by defendants, or whether it is the date of the assumption order, as urged by Bentley, the statute of limitations had not expired under any theory on the date the petition was filed. By virtue of the filing, the statute of limitations was extended for an additional two years under Bankruptcy Code § 108(a)(2) and this action was commenced within that period.

Defendants further argue that as a matter of law Bentley has no cause of action under Section 235–c of the New York Real Property Law. Various grounds are cited for the assertion including Bentley's position as a lawyer, his participation on the

---

1. This case was originally assigned to the Honorable Roy Babitt, who resigned effective July 31, 1982. Judge Babitt's cases were reallocated among the remaining four judges before this judge assumed the bench on September 1, 1982, at which time Judge Babitt's matters were assigned to this judge. In a few instances, such as this one, the judge assigned on an interim basis heard matters after September 1.

2. The owners are three individuals, Peter Sharp, Arnold Kimmel and Norman Peck. These three individuals apparently are still members of the Board of Directors and able to control the board because of their ability to insure election of a fourth board member. The managing agent at the time of conversion was, and presumably still is, wholly owned by Mr. Sharp.

Board of Directors of the cooperative, his alleged acquiescence in and his detailed knowledge of the terms of the proprietary lease, and his present defaults under the proprietary lease. Section 235–c provides as follows:

"1. If the court as a matter of law finds a lease or any clause of the lease to have been unconscionable at the time it was made the court may refuse to enforce the lease, or it may enforce the remainder of the lease without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"2. When it is claimed or appears to the court that a lease or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose and effect to aid the court in making the determination."

■ The key provision in the proprietary lease relevant to this dispute is paragraph 16(c) which provides as follows:

"(c) There shall be no limitation, except as above specifically provided, on the right of Directors or lessees to grant or withhold consent, for any reason or for no reason, to an assignment."

■ This Court finds the provisions of paragraph 16(c) quoted above to be unconscionable as a matter of law at the time the lease was made to the extent that those provisions are applied to prevent Bentley from selling the Apartment because the result would be a forfeiture of the Apartment to the Lessor cooperative corporation. See *Wilson Trading Corp. v. Ferguson Ltd.*, 23 N.Y.2d 398, 403–04, 297 N.Y.S.2d 108, 112, 244 N.E.2d 685, 689 (1968); *Euclid Ave. Assoc. v. City of New York*, 64 A.D.2d 550, 406 N.Y.S.2d 844 (1978). *See also Sidnam v. Washington Sq. Realty Corp.*, 95 Misc.2d 825, 827, 408 N.Y.S.2d 988 (1978) (court may apply § 235–c of the Real Property Law to

avoid an unconscionable result). This Court is of the view that even without the authority granted to it by Section 235–c, it would find, as a matter of contract construction, an implied covenant in the proprietary lease that the consent provision would not be utilized so as to cause a forfeiture of an apartment to the cooperative corporation and consequent benefit to other shareholders[3] to the detriment of the apartment owner. See *Halprin v. 2 Fifth Avenue Company*, 75 App.Div.2d 565 at 566–67, 427 N.Y.S.2d 258 (1st Dept.1980) (dissenting opinion). Bankruptcy courts are courts of equity. *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230, 1232 (1954); 28 U.S.C. § 1481. Equity abhores a forfeiture. *In re Belize Airways Limited*, 2 CBC 2d 657, 660–661 (Bkrtcy.S. D.Fla.1980); *Ringelheim v. Karsch*, 112 N.Y.S.2d 130, 133 (Sup.1952). The Bankruptcy Code has, like its predecessor, many provisions indicative of a legislative mandate to prevent forfeitures of a debtor's property. *See, e.g.,* Code § 365(e)(1).

That the provisions of the proprietary lease cannot effectuate a forfeiture is also mandated by the law of New York in the provisions of Section 270 *et seq.* of the New York Debtor and Creditor Law (McKinney Supp.1982) governing fraudulent conveyances. Section 544(b) of the Bankruptcy Code incorporates state law on this subject. In addition, Section 548 of the Bankruptcy Code establishes an independent basis to avoid fraudulent conveyances. A fraudulent transfer occurs when an insolvent debtor, such as Bentley, transfers or conveys property for less than fair consideration, i.e. a reasonably equivalent value. Transfer and conveyance as used in fraudulent conveyance statutes encompass every mode of disposing of or parting with property. Bentley could not voluntarily relinquish the Apartment to the Lessor in satisfaction of the arrearages unless the arrearages equaled the value of the Apartment because

---

**3.** Although the Court does not view the Lessor's motives for disapproving the Samson transaction as relevant to this motion, the Court notes the possibility that the Lessor's decision was governed by Messrs. Sharp, Kim-mel and Peck and was not made out of genuine concern for the best interests of the owner-occupants of the building or the character of the tenancy of the building.

it would be a fraudulent transfer as to his creditors who would have been deprived without compensation of the debtor's property. It follows that the Lessor cannot do involuntarily what the debtor could not do voluntarily. See *Durrett v. Washington National Ins. Co.,* 621 F.2d 201 (5th Cir. 1980). *Cf. In re Belize Airways Limited,* 2 CBC 2d 657 (Bkrtcy.S.D.Fla.1980) (the bankruptcy court, as a court of equity, may refuse to enforce the termination of a sublease, where, under the circumstances, termination would constitute a forfeiture).

The dispute is not one simply between Bentley and the Lessor. It is between Bentley and Bentley as trustee for his creditors in his capacity as debtor-in-possession, on the one hand, and the Lessor, on the other. It matters not that no creditors have intervened in this dispute as their interests are here through the debtor-in-possession. The Lessor has various choices on how to solve its problem with Bentley. The simplest solution would be to permit the proposed transaction to go through. Alternatively, the Lessor could find a purchaser acceptable to it for the Apartment so that Bentley and his creditors received fair consideration for Bentley's Apartment.

Perhaps at trial the Court will find that the rejection of the proposed transaction with Dr. Samson was not tantamount to forfeiture of the Apartment. But unless the Apartment is worth less than any amounts owed to the Lessor, this Court will be constrained to permit Bentley adequate time to secure a sale at a fair price to another purchaser.

Section 235–c(2) of the New York Real Property Law directs the taking of evidence when the Court finds that it should limit the application of any unconscionable clause so as to avoid an unconscionable result. This Court is of the view that oral testimony will be necessary in this case and the Court thus fixes January 20, 1983 at 10:00 a.m. as a date for trial on this complaint.

The motion to dismiss is denied.

SO ORDERED.