RIVERTOWER ASSOCIATES et al., Respondents, v STUART P. CHALFEN, Appellant.

First Department, January 18, 1990

### APPEARANCES OF COUNSEL

*Edward Hayum* of counsel *(Robert S. Rifkind* with him on the brief; *Cravath, Swaine & Moore,* attorneys), for appellant.

*Alan L. Peck* of counsel *(Walter & Peck,* attorneys), for respondents.

### OPINION OF THE COURT

SULLIVAN, J.

During the fall of 1987, defendant decided to rent an apartment in a building in Manhattan owned by plaintiff Rivertower Associates and managed by plaintiff Harry Macklowe Real Estate Company, Inc., and, on October 10, 1987, tendered to Rivertower a rental application, financial statement and a signed "Standard Form of Apartment Lease", together with a check made out to Macklowe for $13,123.36, one half of which was denominated as a security deposit, refundable with interest upon termination of the lease. The other half represented payment of the first month's rent. The lease, which was for a stated term of two years and 22 days, commencing November 9, 1987, expressly provided, "It is understood and agreed that this lease is submitted to the Tenant for signature with the understanding that it shall not bind the Owner unless and until it has been duly executed by the Owner and delivered to the Tenant."

Defendant and his wife thereafter visited the apartment and allegedly found it to be in a generally uninhabitable condition. Unwilling to take possession in such circumstances, defendant notified Rivertower's rental agent, orally on November 6th, and in writing the next day, that he would not proceed with the rental. Plaintiffs concede that at the time of such notice, which was prior to the inception of the lease term and before defendant took possession, neither Rivertower nor its agent had executed the lease.

Promptly upon receipt of the notice that defendant was unwilling to go forward with the rental, Macklowe's agent, on November 9th, executed the lease and, on November 11th, had

it delivered to defendant. By letter of November 11th, Mack-lowe also informed defendant that it was holding him to the lease. On November 12th, Rivertower's rental agent began to show the apartment to prospective tenants.

Rivertower and Macklowe thereafter commenced this action, claiming that defendant owed them $26,246.72, representing the forfeiture of six months' rent which, under the lease, the tenant must pay upon premature termination of the tenancy ($39,370.08), less the security deposit and first month's rent already paid ($13,123.36). In his answer, defendant denied that an enforceable lease had ever been entered into and counterclaimed for the return of his deposit.

Defendant thereafter moved for summary judgment dismissing the complaint and on his counterclaim. In opposition, plaintiffs asserted that in anticipation of defendant's occupancy the building manager had taken "responsibility for preparation of the apartment" and that Rivertower had expended approximately $2,000 for various kitchen appliances and $900 for custom-made kitchen and bathroom countertops. Plaintiffs argued that in view of these expenditures, made in reliance on defendant's actions, which led them to believe that he intended to occupy the apartment, defendant was not entitled to the return of his deposit.

The motion court agreed that the lease was unenforceable, holding that, to be effective, a delivery of the lease to the party to be charged was required. The court found that defendant had made a prima facie showing of lack of delivery, which plaintiffs had failed to rebut. The court also found that plaintiffs' admission that the lease was not executed until after defendant had revoked his offer was, by the lease's own terms, sufficient to invalidate it.

Finally, the court rejected plaintiffs' argument that the various alterations and improvements they made in anticipation of defendant's tenancy sufficed to meet the partial performance exception under the Statute of Frauds (General Obligations Law § 5-703 [4]), finding that plaintiffs had not demonstrated that their performance was substantial and unequivocally referable to the lease. Indeed, it found that most of the equipment installed in the apartment was purchased approximately a month before the lease was first offered to defendant. Thus, the court granted summary judgment dismissing the

complaint.* Paradoxically, however, it refused to grant summary judgment on defendant's counterclaim and order the return of the sum he had deposited in conjunction with his lease application.

■ With regard to the counterclaim, plaintiffs had argued that they had expended moneys in reliance on defendant's actions, an argument which the court rejected as a basis for sustaining the complaint. The court nevertheless refused to order a return of the deposit, reasoning: "Inasmuch as defendant withdrew his offer only two days before commencement of the term of the lease, there is a question as to whether plaintiff[s] may retain the deposit as damages for lost rent in that the apartment was not offered to others in time to obtain a tenant for November." Defendant appeals from the denial of summary judgment on his counterclaim. We reverse to the extent appealed from and grant summary judgment on the counterclaim as well.

Pursuant to paragraph 5 of the lease, the security deposit, one half of the total deposit herein, can be used to offset the landlord's losses if the tenant "do[es] not carry out [his] agreements in this Lease." The security deposit remains the property of the tenant unless and until he has defaulted in his obligations under the lease. (General Obligations Law § 7-103 [1]; *People v Horowitz,* 309 NY 426, 428.) Upon such default, of course, the deposit may be used to offset actual damages or, if the lease contains an enforceable liquidated damages clause, as liquidated damages.

Where, however, the proposed lease is never executed and the application is no more than an offer to lease subject to acceptance, the landlord must return the security and rent deposit, notwithstanding the presence of a liquidated damages provision in the lease application. *(Sidnam v Washington Sq. Realty Corp.,* 95 Misc 2d 825, 826 [App Term, 1st Dept].) Absent a valid lease, there cannot be a default in obligation warranting the forfeiture of a deposit given to secure performance under the lease. Clearly, the portion of the deposit given pursuant to paragraph 5 of the lease, i.e., the security deposit, cannot be forfeited where there is no lease. Moreover, since the other half of the deposit was an advance payment of the first month's rent, made in accordance with paragraph 3 of the lease, and, as plaintiffs implicitly concede, rent never

---

* Plaintiffs have not appealed the dismissal of the complaint.

accrued, there is no reason why this portion of the deposit should be forfeited either.

Even if forfeiture of the deposit could be deemed damages for nonfulfillment of the lease, the motion court's decision would still be unwarranted since there is no agreement calling for liquidated damages for failure to enter into a lease. The landlord would, at best, be entitled to actual damages. *(See, Broadway Renting Co. v Wolpin,* 59 Misc 199 [App Term]; *see also, Weinberg v Greenberger,* 47 Misc 117, 118 [App Term].) The complaint, however, does not allege any damage flowing from defendant's failure to withdraw his offer sooner, and the court should not have speculated as to such damage. *(Supra,* 47 Misc, at 118-119.) Even if the court's theory—that plaintiffs may be entitled to damages for lost rent in that the apartment was not offered to others in time to obtain a tenant for November—were accepted, such damages should be limited to rent for the time defendant allegedly caused the apartment to be withdrawn from the market. That period extended at most, from the day defendant tendered the rental application, October 10, 1987, to the day he withdrew, November 6, 1987. The deposit in dispute covers rent for more than twice that period.

■ Plaintiffs now argue, for the first time, that in reliance on defendant's "decision to enter the lease" they removed the apartment from the rental market and suffered damages equivalent to three months' rent. This is, however, an insufficient basis for recovery since, apart from the ineffective lease itself, there is no allegation of any statement or promise by defendant upon which plaintiffs relied. *(Cf., Farash v Sykes Datatronics,* 59 NY2d 500, 503.)

■ Since the court found no lease or other contract under which plaintiffs could claim entitlement to defendant's deposit, which was the equivalent of two months' rent, and plaintiffs made no claim to retain the deposit on grounds of actual damages sustained, their only claim rested on the theory that rent was due under a lease, which the court found ineffective. Thus, there exists no issue of material fact with respect to plaintiffs' claim to the deposit, and summary judgment should have been granted on defendant's counterclaim for its return.

Accordingly, the order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered February 16, 1989, which, *inter alia,* denied defendant's motion for summary judgment on his counterclaim, should be reversed to the

extent appealed from, on the law, with costs and disbursements, and the motion granted.

MURPHY, P. J., CARRO, WALLACH and RUBIN, JJ., concur.

Order, Supreme Court, New York County, entered on February 16, 1989, which, *inter alia,* denied defendant's motion for summary judgment on his counterclaim unanimously reversed to the extent appealed from, on the law, and the motion granted. Appellant shall recover of respondents $250 costs and disbursements of this appeal.