**In re Karen de KLEINMAN, Debtor.**

**Bankruptcy No. 91–B–11913.**

United States Bankruptcy Court,
S.D. New York.

Jan. 15, 1992.

Karen de Kleinman, pro se.

Zeichner Ellman & Krause by Barry J. Glickman, New York City, for Citibank, N.A.

## MEMORANDUM DECISION WITH RESPECT TO APARTMENTS 26A AND 39E AND ORDER

PRUDENCE B. ABRAM, Bankruptcy Judge.

This personal Chapter 11 case has proved to be but a continuation in yet another forum of the litigation between the debtor, Karen de Kleinman ("Debtor"), and the holders of liens on, or rights to, various properties the Debtor owns or asserts an interest in. By memorandum decision dated August 25, 1991, this court denied the Debtor's motion for reargument of this court's determination to lift the automatic stay with respect to Unit 38C in the Olympic Towers, a luxury condominium located at 647 Fifth Avenue, which is in the heart of Manhattan and adjacent to the world-famous St. Patrick's Cathedral. Familiarity with that decision will be presumed. The present decision concerns a motion to lift the automatic stay with respect to Apartments 26A and 39E in the same building made by Citibank, N.A. ("Citibank") by application dated August 13, 1991.

Oral argument was heard on the motion on September 26, 1991. As was the case on the earlier stay motion, the Debtor failed to submit to this court or to her adversary, any written response opposing the motion in advance of the hearing. Instead, immediately prior to the hearing, she submitted a motion for recusal based upon the court's previously expressed lack of sympathy for her *pro se* status, which motion she supported by reference to a popular publication containing reviews of judges. Once in court, the Debtor, as at the prior hearing, requested an adjournment, claiming that as a *pro se* litigant she did not "have the time in her life" after she received the motion to prepare a response since she was involved in time-consuming litigation in state court.

■ Once again, when this court denied her requests for recusal and postponement, the Debtor demonstrated that she had done considerable preparation. She assailed her adversaries with claims of fraud and conspiracy in connection with their attempts to foreclose on the Apartments. After the court ruled against her, and subsequent to the hearing, the Debtor again submitted voluminous papers to the court consisting primarily of copies of pleadings she had submitted in various lawsuits outside the bankruptcy court. The Debtor also submitted a counter-order reflecting findings contrary to those made at the hearing. Again, this court treats the Debtor's counter-order and submissions as a motion for reargument. See Bankruptcy Rule 9023.

In order to assist other courts who must deal with the on-going litigation between the Debtor and Citibank, this court has determined that it should reduce its decision to writing. For the reasons which follow, the Court adheres to its original ruling and denies the motion for reargument. With respect to Apartment 26A, this court has granted Citibank's motion to lift the automatic stay. As to Apartment 39E, this court has held that a hearing is

required to determine whether the Debtor has any equity in the Apartment 39E, i.e., whether Apartment 39E has a value in excess of the liens on it, including those held by Citibank. The court declines to disturb either ruling and fixes the hearing for February 7, 1992 at 11:00 a.m.

## FINDINGS OF FACT

On April 27, 1991, the Debtor, an individual who is a licensed real estate broker, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code.[1] Her petition states that the Debtor is the sole shareholder of a subchapter S corporation from which she is stated to have earned an income of $250,000 in 1990 from commissions and fees from real estate brokerage activities. Among her activities has been the rental and subleasing of apartments, including several in Olympic Towers.

Prior to the filing of the Chapter 11 petition and in November and December of 1990, Citibank obtained judgments of foreclosure on Apartments 26A and 39E. The Debtor has made full and exhaustive use of the trial and appellate levels of the state court in an effort to set aside those judgments.

### Apartment 26A

In 1985, the Debtor contracted to purchase Apartment 26A from A–I International Corp. ("A–I") and obtained a mortgage from Citibank in order to finance the purchase price. A–I ultimately received the purchase price and the Debtor thereafter commenced to occupy Apartment 26A, which she claims is now her primary residence. For reasons that are disputed but which have been extensively litigated outside of the bankruptcy court, the condominium's Board of Directors refused to approve the Debtor as purchaser.[2] As a re-

sult, the Debtor does not hold legal title to Apartment 26A and is not in a position to compel the transfer of legal title to herself. Legal title resides in A–I.

Citibank holds a mortgage on Apartment 26A on which it calculates the present principal balance to be $656,127.95. In November 1990, the New York State Supreme Court, upon Citibank's motion, found the mortgage to be in default since November 1987 and entered a judgment of foreclosure with respect to Apartment 26A. Citibank asserts, and the Debtor does not dispute, that the Debtor has made no payments on the loan since the filing of her bankruptcy petition.

The Debtor has argued that the 1990 judgment of foreclosure is without legal effect and that Citibank committed a "fraud" upon the court that issued the foreclosure judgment. The Debtor attaches great significance to an earlier finding of the New York State Supreme Court relating to Apartment 26A. In September 1987 the Supreme Court determined that the Debtor had purchased Apartment 26A from A–I in violation of the condominium by-laws because she had not complied with the Board's request for a financial statement of her assets, liabilities and income. The Supreme Court declared the sale void and found that the Debtor had no right of ownership or occupation with respect to Apartment 26A. The Supreme Court held that as a consequence the Debtor was not legally obligated to pay common charges with respect to Apartment 26A.

The Debtor has relied on this 1987 ruling to formulate her argument that Citibank committed fraud when it obtained the foreclosure judgment. She claims that Citibank failed to apprise the state court judge

---

1. The Debtor caused the filing of a Chapter 11 petition, Case 91–B–4843, by her daughter, Sabrina de Kleinman ("Sabrina"), a student at a California college, on October 28, 1991.

2. From the various pleadings submitted, it appears that in 1985 when the Debtor contracted to purchase Apartment 26A, the condominium by-laws required any residential unit owner to notify the Board of any proposed sale and to provide it with "such further information as it

may reasonably request." There existed a "first refusal" clause in the condominium's by-laws which empowered the Board to purchase the unit on behalf of all unit owners upon the same terms and conditions contained in an outside offer. Within twenty days of receiving the information, the Board could exercise its right of first refusal. Any sale of a unit in violation of these rules was voidable at the election of the Board.

who issued the judgments of foreclosure in 1990, of the 1987 ruling made by another judge. She reasons that because the deed granting her title to Apartment 26A is void, that the liens of Citibank against Apartment 26A for the loans she procured are thereby void as well, and she is not liable for payment on those loans.[3]

*Apartment 39E*

The Debtor has never lived in Apartment 39E. It is presumed that the Debtor has sublet this apartment and is receiving rental income. See Memorandum Decision of August 25, 1991. Citibank is the holder of two mortgages on Apartment 39E with a combined estimated present principal balance of $760,400.70. Citibank alleges that the Debtor has been in default on the two mortgages since August and June 1987 respectively. The Debtor has made no payments on either mortgage since the filing of her bankruptcy petition.

In December 1990, in a separate foreclosure action, the state court granted Citibank a judgment of foreclosure. Citibank states that it is currently owed in excess of $1,026,132 on the liens on Apartment 39E. Citibank has valued Apartment 39E at approximately $650,000.[4] The Debtor, on the other hand, claims that Apartment 39E is worth approximately $1.5 million, and that Citibank has, in bad faith, undervalued the property and overvalued the encumbrances on the property.

## CONCLUSIONS OF LAW

Bankruptcy Code § 362(d) provides as follows:

"On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization."

■ It is the position of Citibank that the Debtor does not have an equity in either Apartment 26A or 39E, one of the factors relevant to whether the automatic stay should be vacated under Bankruptcy Code § 362(d)(2). With respect to Apartment 39E, the Debtor has disputed the value that Citibank has placed on it. If the Debtor's valuation were correct, there would be an equity over and above the amount due on the Citibank liens. The Federal Rules of Evidence permit the expression of lay opinions, including opinions as to value of property owned by the witness. See F.R.Evid. 701. Because the Debtor is in the real estate business and her opinion is entitled to be given at least some weight, this court held that a hearing is required to determine valuation.

■ Assuming that at the conclusion of the hearing it is determined that the

---

3. The apparent aim of the various litigations the Debtor is currently pursuing outside the bankruptcy court with respect to Apartment 26A is to obtain legal title to this Apartment free of the Citibank lien. As more fully discussed *infra,* the Debtor does not appear to recognize that she could still recapture whatever equity may remain in Apartment 26A after years of non-payment of the Citibank mortgage and the common charges through compelling a sale by A–I to a third party. There is nothing in the record that even suggests that A–I has made any claims to Apartment 26A adverse to the Debtor or that A–I would oppose the sale of the Apartment to a third party.

4. Citibank, which had referred to an appraisal of Apartment 39E in its motion, forwarded a copy of the appraisal to the Court subsequent to the September 26 hearing. The appraisal values Apartment 39E, which is a 3½ room apartment, at $640,000 on the basis of three comparable sales in Olympic Towers which occurred in 1989 and 1990. The *New York Observer* recently reported the sale of a 3½ room apartment in Olympic Towers for $550,000, an amount below the Citibank appraisal. *See New York Observer,* Oct. 7, 1991 at 15 ("Park Ave. Auction: What Next?"). *See also New York Observer,* Dec. 23, 1991 at 20 ("Upper East Side Sales Hold Steady Downtown, Murray Hill Picking Up") (4½ room apartment at Olympic Towers sold for $1,125,-000).

value of Apartment 39E exceeds the amount of the liens on it, this court could decline to lift the automatic stay under Bankruptcy Code § 362(d)(2) on the grounds that Apartment 39E is necessary for an effective reorganization. Generally speaking, a privately negotiated sale of an apartment of the type of Apartment 39E will bring a better price than a sale of such an apartment under a foreclosure hammer. However, if the Debtor declines to offer adequate protection payments to Citibank and/or fails to pursue a prompt sale of Apartment 39E under the auspices of the bankruptcy court,[5] that would constitute cause to lift the automatic stay under Bankruptcy Code § 362(d)(1).

The Debtor has alleged that Citibank committed fraudulent acts in order to procure a foreclosure judgment against Apartment 39E, and she states that she intends to appeal the foreclosure judgment. However, this court does not agree that the automatic stay in this case must remain in place pending the final breath of argumentation in the state courts. It appears more appropriate that if indeed the Debtor has the equity cushion she insists upon, that this court order a sale of Apartment 39E free and clear of liens, and that the liens attach to the proceeds of sale.

▆▆▆ With respect to Apartment 26A, this court reaffirms its ruling that it is required to lift the automatic stay for cause under Bankruptcy Code § 362(d)(1). For the purpose of determining whether to lift the automatic stay, it is appropriate for a bankruptcy court to review any pending or prior non-bankruptcy litigation to determine how it impacts on the motion before

the bankruptcy court. The bankruptcy court needs to review the non-bankruptcy litigation to determine how the results of that litigation fit into the scheme created by the Bankruptcy Code. The statutory scheme created by the Bankruptcy Code contemplates that a debtor's assets will be held or sold in a manner best calculated to protect the interests of creditors and the debtor.

▆▆▆ Here the Debtor has acknowledged that prior to bankruptcy the state courts issued various judgments, including a judgment of foreclosure, that affect Apartment 26A. The judgments, whether erroneous or not, must be respected by this court.[6] See *Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987). Bankruptcy proceedings simply cannot be used to relitigate issues already resolved in a court of competent jurisdiction. The issues that the Debtor complains of before this court were available to be raised in the foreclosure action and this court must treat those judgments as *res judicata* of all of the issues the Debtor did raise, as well as those that she could have raised.

The Debtor has been intransigent in her desire to continue her multitude of litigations in courts other than the bankruptcy court with respect to Apartment 26A. Indeed among the supplementary papers the Debtor submitted to this court were copies of her petition for a writ of certiorari to the Supreme Court of the United States with respect to the ruling upholding the refusal of the condominium to permit transfer of title of Apartment 26A to her. In essence

---

5. Under Bankruptcy Code § 363(f), the court can direct the sale of property free and clear of liens, claims and encumbrances. This court has previously held that a cooperative cannot use the provisions of a proprietary lease so as to cause the forfeiture of the debtor's equity in an apartment to the cooperative because it would be unconscionable as a matter of law and a fraudulent conveyance. See *In re Bentley*, 26 B.R. 69 (Bankr.S.D.N.Y.1982). The possibility of a sale under bankruptcy court auspices also exists as to Apartment 26A since the Debtor has both a beneficial and a possessory interest although she is not the title owner of the Apartment.

6. The Debtor's claim that the foreclosure judgment is invalid because of the 1987 judgment appears weak in any event. The Debtor encumbered Apartment 26A when she had apparent title and was at least a contract vendee. *See* N.Y.R.P.L. § 11 ("A person other than a minor, a mentally retarded person, or person of unsound mind, seized of or entitled to an estate or interest in real property, may transfer such estate or interest.") *See also* New York Jurisprudence 2d, Mortgages §§ 44–47.

the Debtor wants to use the automatic stay in lieu of obtaining an appeal bond.

It is evident that the Debtor has no desire to make use of any of the provisions of the Bankruptcy Code which might enable a sale of Apartment 26A in the bankruptcy case. This court is not disposed to allow the Debtor to brandish the 1987 ruling as a shield to repel common charges and debt service obligations and the automatic stay as a sword to prolong occupation of the Apartment 26A. The non-bankruptcy litigations are in an advanced stage and should be allowed to run their respective courses unfettered by the automatic stay.

The Debtor has evinced no comprehension of the distinction between *in personam* actions and *in rem* actions. Her personal liability on the various Citibank mortgages would be discharged if a plan is confirmed in this Chapter 11 case and no successful objection to discharge or dischargeability is made. Any discharge would not, however, eliminate the liens of the various mortgages on the two Apartments.

A hearing to determine the value of Apartment 39E is hereby set for February 7, 1992 at 11:00 a.m. Both parties are directed to submit a list of witnesses to be heard, and a copy of any appraisal expected to be offered, to chambers on or before January 31, 1992 by 4:30 p.m.

A separate order with respect to Apartment 26A is being signed concurrently herewith.

It is so ordered.

## ORDER

Upon the application of Citibank, N.A. ("Citibank"), seeking an order granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and (2) and allowing Citibank to pursue its statutory remedies with respect to the debtor's property located at 641 Fifth Avenue, New York, New York, Apartment 26A (the "Property"), upon the affidavit of service duly filed, and a hearing having been held before the Honorable Prudence B. Abram, Bankruptcy Judge, on September 26, 1991 and Citibank having

appeared by its attorneys, Zeichner Ellman & Krause, Esqs., Barry J. Glickman, Esq., of counsel, in support thereof, and the debtor having appeared, *pro se*, in opposition thereto, and sufficient cause appearing therefore, and the court having issued its memorandum decision dated January 15, 1992 it is

ORDERED, that Citibank is hereby granted relief from the automatic stay to foreclose its mortgage against the Property.