**In re Karen de KLEINMAN, Debtor.**

**Bankruptcy No. 91 B 11913 (SMB).**

United States Bankruptcy Court,
S.D. New York.

Sept. 26, 1994.

■■■■■■■■■■■■■■■■■■

Karen de Kleinman, debtor pro se.

Togut, Segal & Segal (Neil Berger, of counsel), New York City, for trustee.

Stern, Wiener & Levy (Joel S. Stern, of counsel), New York City, for Olympic Tower Condominium.

## MEMORANDUM DECISION REGARDING OBJECTION TO DEBTOR'S EXEMPTIONS

STUART M. BERNSTEIN, Bankruptcy Judge.

The Trustee and Olympic Towers Condominium object to the Debtor's exemption claims—other than the exemption for domestic animals and food—either because the exemptions are not permitted by law, or should not be permitted unless the Debtor provides more specific information from which the parties can determine if the claimed exemptions are permissible. The Debtor counters, challenging both the procedural and substantive bases for the objections. She argues that except with respect to certain exemptions that she claimed in March 1994, the objections are untimely.[1] She further argues that she is entitled to the exemptions she has claimed. For the reasons stated below, the motions are granted in part and denied in part.

### FACTS

The Debtor filed her chapter 11 petition on April 29, 1991. In her original schedules, she asserted the following four exemptions:

| Property | Location | Statute | Value |
|---|---|---|---|
| 1. Personal Furniture | Condo Unit 26–A 641 Fifth Ave., NYC Petitioner/Debtor's Residence and Place of Business | CPLR | 10,000 |
| 2. Personal Clothing | Condo Unit 26–A 641 Fifth Ave., NYC See 7(b) below | CPLR | 1,000 |
| 3. Business Auto | '89 Grand Voyager/Plymouth, Circle Garage, 200–206 West 52nd Street, New York, NY 10019 | CPLR | 5,000 |
| 4. Personal Home | Condo Unit 26A, 641 Fifth Ave., NYC | CPLR | 10,000 |

In August 1991, the Debtor amended her exemptions to add the following additional items:

| | | | |
|---|---|---|---|
| 5. Jewelry | One wedding ring; One watch | CPLR | |
| 6. Domestic animals and food | | CPLR | |

---

1. Olympic Towers has only objected to the Debtor's March 1994 exemptions. Hence, the timeliness objection is directed at the Trustee alone.

| Property | Location | Statute | Value |
|---|---|---|---|
| 7. Causes of Actions involving insurance claims: | | CPLR | |
|    a) Disability claim for lost income (1987/88) vs. Equitable Life Assurance Co.; | | | |
|    b) Damaged household contents (180 David's Hill Road, Bedford Hills, N.Y.), suffered on January 31, 1989 (SEE, litigation pending) | | | |
| 8. Security Deposits: as permissible | | CPLR | |
| 9. Condo Unit 26–A, 641 Fifth Ave., NYC, held in trust for DIP by its actual owner, AI International Corp. | | CPLR | |

By Order dated November 23, 1993, the Court, per Bankruptcy Judge Prudence Beatty Abram, converted the Debtor's case to chapter 7, and shortly thereafter, the United States Trustee appointed Albert Togut (the "Trustee") as the interim trustee.[2] The Court scheduled the initial Section 341 meeting for January 26, 1994, and at that time, the Debtor apparently testified for three hours. The Trustee did not conclude the meeting, and adjourned it to February 23, 1994. The Debtor failed to appear on the adjourned date, and the Trustee adjourned the meeting to March 23, 1994. On the latter date, the Debtor appeared but refused to cooperate, and the Trustee again adjourned the meeting to April 27, 1994.

In the interim, the Debtor amended her exemptions for a second time on or about March 14, 1994. Her latest amendment asserted the following new exemptions:

| Property | Location | Statute | Value |
|---|---|---|---|
| 10. 100% Shares of Stock in Apartment Locating, Inc., a wholly owned Sub–S corporation and Licensed Real Estate Broker through which the debtor operates her personal services real estate business. | CPLR 5205(a)(7) Fed. R.Civ.P. 64 11 U.S.C. § 541(a)(6) U.S. Bankruptcy Code's controlling "rehabilitation" and "fresh start" policies. | unknown | unknown |
| 11. All post-petition earnings/income derived from the personal services of the debtor. | CPLR 5205(d)(2) Fed. R.Civ.P. 64 11 U.S.C. § 541(a)(6) U.S. Bankruptcy Code's controlling "rehabilitation" and "fresh start" policies. | unknown | unknown |

On April 13, 1994, the Trustee filed his objection to all of the Debtor's exemptions (except for pets and food), and Olympic Towers filed objections to the March 1994 exemptions. As the former subsumes the latter, the Court will speak solely in terms of the Trustee's objections.

2. Mr. Togut thereafter became the permanent trustee by operation of law. *See* 11 U.S.C. § 702(d).

## DISCUSSION

### A. Introduction

Federal bankruptcy law governs the procedures for asserting and objecting to exemptions. Under 11 U.S.C. § 522(1) and Bankruptcy Rule 4003(a), the debtor must set forth her exemptions in her schedule of assets filed pursuant to Bankruptcy Rule 1007.

Under Bankruptcy Rule 4003(a), the trustee or creditors must object within 30 days of the "conclusion of the meeting of creditors held pursuant to Rule 2003(a)." [3] If the debtor files amended or supplemental schedules, objections must be filed within 30 days thereafter. Prior to the time that the objection period runs, the bankruptcy court can extend it. If no one objects, the property is deemed to be exempt. 11 U.S.C. § 522(*l*).

The Debtor raises two threshold issues concerning the timeliness of the Trustee's objections: First, she contends that the objections to the 1991 exemptions are time barred because they were not asserted within 30 days of the conclusion of the first meeting of creditors held in the Debtor's chapter 11 case. Second, the Trustee failed to assert his objections to her 1991 exemptions within 30 days of the conclusion of the § 341 meeting held in her chapter 7 case. Both arguments lack merit.

## B. The Effect of Conversion

■ In arguing that the Trustee's objections are time-barred because he did not assert them in 1991—nearly three years before he was appointed—the Debtor relies on *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). In *Taylor,* a chapter 7 debtor claimed an exemption for the potential proceeds of a prepetition discrimination lawsuit. Her schedules described the proceeds as based on lost wages and emanating from an identified lawsuit of unknown value. *Id.* at ——, 112 S.Ct. at 1646. At her Section 341 meeting, the debtor testified about the lawsuit. The trustee concluded that it lacked value and decided not to object to the exemption claim. *Id.* at —— – ——, 112 S.Ct. at 1646–47.

The trustee's failure to object was a mistake. Nearly two years after the Section 341 meeting, the debtor recovered a judgment on the issue of liability, and subsequently settled for damages in the sum of $110,000.00, most of which the debtor paid to her attorneys. *Id.* at ——, 112 S.Ct. at 1647. The trustee, upon learning of this, demanded that the recipients turn over their proceeds, but they refused, arguing that the trustee had failed to object to the exemption. *Id.*

Affirming the Third Circuit, the Supreme Court ruled that the trustee could not belatedly challenge the exemption. It held that absent an extension by the bankruptcy court, the trustee must object to the debtor's exemptions within the time period set forth in Bankruptcy Rule 4003(b). If he fails to do so, the exemptions stand even though the debtor had no colorable basis to claim them. *Id.* at ——, 112 S.Ct. at 1648. The Supreme Court refused to reach the trustee's argument that 11 U.S.C. § 105(a) nonetheless authorizes a bankruptcy court to strike exemptions asserted in bad faith because he had not raised it below, although it did note, *in dicta,* that several courts had accepted the trustee's argument. *Id.* at ——, 112 S.Ct. at 1649.

*Taylor* involved a straight chapter 7 case, start to finish, rather than a chapter 11 converted to a chapter 7 several years later. Nevertheless, the Debtor argues that under *Taylor,* the Trustee's objections to her exemptions are untimely because he did not object to the 1991 exemptions during her chapter 11, *i.e.,* nearly three years before he was appointed. The *Taylor* case, however, did not address the effect of a conversion from chapter 11 to chapter 7 on the 30–day objection period under Bankruptcy Rule 4003(b), and the holding in *Taylor* does not dictate the outcome of the Trustee's objections.

The conversion of a case from one chapter to another constitutes an order for relief although it does not affect the petition date, the commencement of the case or the original order for relief. 11 U.S.C. § 348(a). As a consequence of the conversion and the resulting order for relief, the United States Trust-

---

**3.** Bankruptcy Rule 2003(a) establishes the procedure for calling and holding the meeting of credi-

tors mandated by 11 U.S.C. § 341(a).

ee must convene a new meeting of creditors, 11 U.S.C. § 341(a); Bankruptcy Rule 2003(a). The majority of courts have concluded that a new 30–day objection period begins to run following the conclusion of the post-conversion meeting of creditors. *See, e.g., In re Toronto,* 165 B.R. 746, 758 (Bankr. D.Conn.1994); *In re Bergen,* 163 B.R. 377, 379 (Bankr.M.D.Fla.1994); *In re Jenkins,* 162 B.R. 579, 580–81 (Bankr.M.D.Fla.1993); *In re Leydet,* 150 B.R. 641, 644 (Bankr. E.D.Va.1993).[4]

The rule authorizing a new objection period represents the only practical construction of the law. In a chapter 11, the debtor has no incentive to object to her own exemptions, and the creditors may also have little reason to do so. Their primary consideration is to negotiate an acceptable distribution under a plan, and even a successful objection would have a minimal effect on their distribution. *In re Bergen,* 163 B.R. at 379.

Conversion to chapter 7 adds parties, and changes their expectations. A newly-installed trustee marshals the debtor's assets, 11 U.S.C. § 704(1), and creditors receive distributions based on the amount of the marshalled assets rather than under a plan. *See* 11 U.S.C. § 726. Hence, the creditors and trustee focus on maximizing the amount of distributable assets in the trustee's hands rather than negotiating a plan with a debtor for part of her assets or future income. In addition, conversion enfranchises an entirely new class of administrative creditors. *In re Bergen,* 163 B.R. at 380.

Adopting the Debtor's erroneous interpretation would foreclose a trustee—most frequently the only person with sufficient interest and the duty to do so—from opposing baseless exemptions asserted at a time when the debtor-in-possession had control over her

assets and the case, and before the trustee was ever appointed. This urges an impractical and unrealistic interpretation of the bankruptcy process, and must, therefore, be rejected. *In re Leydet,* 150 B.R. at 644; *accord Huennekens v. Nicoll (In re Southern Int'l Co.),* 159 B.R. 192, 194 n. 4 (Bankr. E.D.Va.1993).

## C. The Conclusion of the Meeting of Creditors

The Debtor next contends that even if the conversion triggers a new 30–day objection period, the Trustee's objections to the 1991 exemptions are still time barred. Her argument draws a distinction between the first meeting of creditors referred to in Bankruptcy Rules 2003(a) and 4003(b), and the adjourned meeting discussed in Bankruptcy Rule 2003(e). She contends, in effect, that the first meeting is a "one shot event" that concludes on the same day it starts, and objections must be filed within 30 days of that concluded meeting. This argument creates a distinction that does not exist.

Absent a court-ordered extension, Bankruptcy Rule 4003(b) requires the trustee or creditors to file their objections within 30 days of the "conclusion" of the Bankruptcy Rule 2003(a) meeting. Bankruptcy Rule 2003(e) provides:

> The meeting may be adjourned from time to time by announcement at the meeting of the adjourned date or time and without further written notice.

The Court does not conclude, as the Debtor does, that the "meeting" referred to in Bankruptcy Rule 2003(a)—and hence Bankruptcy Rule 4003(b)—is different from the meeting referred to in Bankruptcy Rule 2003(e). Indeed, such a construction is

---

4. The only contrary authority that the Debtor cites is *In re Halbert,* 146 B.R. 185 (Bankr. W.D.Tex.1992). The *Halbert* court read *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) to preclude the establishment of a new 30 day objection period following conversion and the new § 341 meeting. *Halbert* is against the weight of authority, and subsequent cases have expressly refused to follow it.

*See, e.g., In re Toronto,* 165 B.R. at 758 (citing *Halbert* as contrary to the court's conclusion); *In re Bergen,* 163 B.R. at 379 (distinguishing *Halbert* on the basis that it was commenced as an involuntary chapter 7 case); *In re Leydet,* 150 B.R. at 643 n. 1 (distinguishing *Halbert,* but ultimately concluding that "to the extent *Halbert* can be considered instructive I choose not to follow it").

wrong because there is no other meeting to which it could refer.

Similarly, the commencement and conclusion of the Bankruptcy Rule 2003(a) meeting need not occur on the same day. If Bankruptcy Rule 4003(b) intended objections to be filed within 30 days of the first date set for the § 341 meeting, rather than after the conclusion of the first meeting, it would have said so. When the rulemakers wanted to make that distinction, they had no trouble expressing it. *See, e.g.,* Bankruptcy Rule 3002(c) (in chapters 7, 12 and 13, proofs of claim must be filed "within 90 days after the first date set for the meeting called pursuant to § 341(a) of the Code"); Bankruptcy Rule 3004 (debtor or trustee may file a proof of claim where the creditor failed to do so "on or before the first date set for the meeting of creditors called pursuant to § 341(a) of the Code"); Bankruptcy Rule 4004(a) (objections to discharge must be filed no later than "60 days following the date set for the meeting of creditors called pursuant to § 341(a)"); Bankruptcy Rule 4007(c) (complaints to determine the dischargeability of certain debts must be filed not later than "60 days following the date set for the meeting of creditors called pursuant to § 341(a)").

The Trustee in this case filed timely objections. The § 341 meeting commenced on January 26, 1994. The questioning could not be completed, and the Trustee adjourned the § 341 meeting to February 23, 1994. The Debtor did not appear on February 23, and the Trustee adjourned the § 341 meeting to March 23, 1994.

On March 23, 1994, the Debtor appeared, and the Trustee conducted the adjourned meeting. As a result of the Debtor's refusal to cooperate—documented in a transcript that provided the evidentiary basis for a July 15, 1994 Order citing the Debtor for civil contempt—the Trustee again adjourned the § 341 meeting to April 27, 1994. The Trustee, however, filed his objections on April 13, 1994, prior to the conclusion of the § 341 meeting.

### D. The Trustee's Objections

#### 1. *Introduction*

■ Having concluded that the Trustee filed timely objections, the Court must determine whether the Debtor is entitled to exemptions regarding the assets identified in her original schedules and her amended exemption lists. While public policy favors a liberal construction of exemptions, it does not permit a court to redraft the exemption statutes. *In re Rundlett,* 153 B.R. 126, 130 (S.D.N.Y.1993); *In re Hill,* 95 B.R. at 297; *In re De Vries,* 76 B.R. 917, 917–18 (Bankr. N.D.N.Y.1987). In other words, courts should interpret statutory exemptions in a manner to effectuate the policy of a "fresh start", not a "head start". *See In re Hill,* 95 B.R. at 297.

■ Under Bankruptcy Rule 4003(c), the objecting party must prove that the exemptions are not properly claimed. But "[e]xempting property is not a game of hide and seek," *In re Edmonds,* 27 B.R. 468, 469 (Bankr.M.D.Tenn.1983) (internal quotations omitted); *accord, In re Hill,* 95 B.R. 293, 299 (Bankr.N.D.N.Y.1988), and the initial burden falls upon the debtor to particularize her exemptions in order "to permit a trustee to ascertain, *without any further substantial inquiry,* those properties which a debtor believes to be exempt from distribution to creditors." *Id.* at 297; (emphasis in original) (quoting *In re Elliott,* 31 B.R. 33, 35 (Bankr. S.D.Ohio 1983)); *accord Andermahr v. Barrus (In re Andermahr),* 30 B.R. 532, 533 (Bankr. 9th Cir.1983); *see* 11 U.S.C. § 522(*l*); Bankruptcy Rule 4003(a).

#### 2. *The Debtor's Exemptions Under New York Law*

New York has opted out of the exemptions set forth in 11 U.S.C. § 522. N.Y.Debtor & Creditor Law § 284 (McKinney 1990); *In re Rundlett,* 142 B.R. 655, 657 (Bankr.S.D.N.Y. 1992), *aff'd,* 153 B.R. 126 (S.D.N.Y.1993); *In re Hill,* 95 B.R. at 298. The New York bankruptcy exemption law is set forth in Sections 282 and 283 of the Debtor & Creditor Law. They incorporate many of the exemptions recognized in Article 52 of New York's Civil Practice Law & Rules and also establish additional exemptions based upon the federal exemptions in 11 U.S.C. § 522(d).

Section 282 limits bankruptcy exemptions to those set forth in the N.Y.Civ.Pract.L. & R. ("CPLR") § 5205 (McKinney 1978 & 1994 Supp.) (personalty), CPLR § 5206 (realty) and N.Y.Insurance Law § 3212 (McKinney 1985 & 1994 Supp.) (insurance policies, annuity contracts and their proceeds and avails). In addition, § 282 adds three of the exemptions contained in the federal Bankruptcy Code. First, § 282(1) exempts one motor vehicle not exceeding $2,400 in value, exclusive of liens. This doubles the exemption in 11 U.S.C. § 522(d)(2). Second, § 282(2) mirrors 11 U.S.C. § 522(d)(10), and exempts certain benefits akin to future earnings such as welfare, social security, unemployment compensation, veterans' benefits, disability, alimony and support, and similar benefits, including those payable under qualified pension plans. Third, § 282(3), derived from 11 U.S.C. § 522(d)(11), exempts certain payments based on personal injury, wrongful death and lost future earnings.

Section 283 limits or qualifies the bankruptcy exemptions granted under § 282. Under § 283(1), the debtor obtains an aggregate $5,000.00 exemption with respect to personal property exempt under CPLR § 5205(a)[5] and a narrower class of annuity contracts. Further, § 283(2) grants an alternative cash exemption, provided the debtor satisfies two conditions. If the debtor does not claim a homestead exemption, and exempts personal property under § 283(1) that is worth less than $5,000.00, the debtor can exempt cash or certain cash equivalents up to the lesser of $2,500.00 or the difference between $5,000.00 and the value of the property exempt under § 283(1).[6]

Initially, the Trustee argues that the Court should disallow all of the exemptions because the Debtor's petition and schedules lack sufficient information, and the Debtor refuses to cooperate. The Court disagrees, however, that the schedules and the Statement of Financial Affairs lack sufficient information to rule on at least some of the exemption claims. Accordingly, the Court will first consider those exemptions that do not require additional inquiry.

### a) Condo Unit 26–A

■ The Debtor seeks to exempt her interest in Condo Unit 26–A under two separate provisions of law—the homestead exemption and the trust exemption. The unusual history surrounding the Debtor's abortive effort to acquire Condo Unit 26–A, detailed in *In re de Kleinman*, 136 B.R. 74 (Bankr.S.D.N.Y.1992), makes application of these normally straightforward exemptions, like almost everything else in this case, a ground for litigation.

In June 1985, the Debtor entered into a contract with AI International Corp. ("AIC"), the owner, to purchase Condo Unit 26–A for approximately $1,000,000.00, primarily with money borrowed from Citibank, N.A. *Id.* at 76. The sale closed in violation of the condominium by-laws, and by a subsequent Order and Judgment dated November 12, 1987, the Supreme Court of the State of New York declared that the sale was void. *Id.* The Contract of Sale provided that if the sale was voided, AIC would hold the property in trust for the Debtor. As a result of these events, AIC still holds legal title, *id.*, and the Debtor holds a beneficial interest.

■ The New York homestead exemption, contained in CPLR § 5206(a), exempts, *inter alia*, a condominium unit, up to

---

**5.** Several of the CPLR § 5205(a) exemptions contain their own monetary limitations. These include books (not exceeding $50.00 in value), domestic animals and their food (not exceeding $450.00 in value), a watch (not exceeding $35.00 in value) and necessary working tools and implements (not exceeding $600.00 in value). These limitations are in addition to the overall $5,000.00 limit in § 283(1). *See In re Pearl*, 28 B.R. 492, 493 (Bankr.E.D.N.Y.1983). For instance, a debtor's exemption for necessary working tools and implements cannot exceed $600.00,

even if the aggregate value of the other property claimed under § 283(1) does not reach $5,000.00.

**6.** The Debtor has claimed a homestead exemption, and has not sought to exempt any annuity contract benefits. Accordingly, she cannot exempt any cash or cash equivalents, but can exempt up to $5,000.00 of personal property under CPLR § 5205(a).

$10,000.00 in value, exclusive of liens, provided that the unit is "owned and occupied [by the debtor] as a principal residence." The Court assumes for the sake of argument that the Debtor occupies Condo Unit 26–A as her principal residence; she does not, however, satisfy the "ownership" test. In common legal parlance, "ownership" means having "good legal title," *Black's Law Dictionary* 1105 (6th ed. 1990), and the homestead exemption extends only to homeowners. *In re Miller*, 103 B.R. 65, 68 (Bankr.N.D.N.Y. 1989). Consequently, it does not protect a possessory interest that is not accompanied by ownership. *See In re Hill*, 95 B.R. at 298 (the New York homestead exemption does not exempt an apartment lessee's interest).[7]

The Court has already held, in *In re de Kleinman*, 136 B.R. at 76, and the Debtor's schedules concede, that AIC holds legal title to Condo Unit 26–A. The homestead exemption does not protect the Debtor's beneficial interest; accordingly, she cannot invoke the homestead exemption, and the Trustee's objection is sustained.

■ The Debtor's invocation of the "trust" exemption to shield Condo Unit 26–A also lacks merit. With exceptions not relevant here, CPLR § 5205(c)(1) provides:

[A]ll property while held in trust for the judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment.

The Debtor cannot rely on the foregoing trust exemption to shelter her interest in Condo Unit 26–A for the reasons previously articulated by Bankruptcy Judge Abram.

*See In re de Kleinman*, No. 91 B 11913, mem. endorsement at 6 (Bankr.S.D.N.Y. March 8, 1993). In that decision, which is "law of the case," Judge Abram refused to sign the Debtor's *ex parte* order, the effect of which would have confirmed the exempt status of Condo Unit 26–A. Judge Abram reviewed the trust exemption statute, and held that it was inapplicable:

The trust exemption would not appear to be applicable to Unit 26–A. . . . There is no actual trust with Unit 26–A as its *res*. Moreover, even if there were, the trust would probably be deemed to have been self-created so the exemption would not shield the trust *res* from liability to execution.

*Id.*

■ Even if this prior determination were not "law of the case", the Court agrees with Judge Abram, and concludes that the trust exemption does not apply to the Debtor's interest in Condo Unit 26–A. Under New York law, self-created trusts are void as against present and future creditors. N.Y.Est.Powers & Trusts Law ("EPTL") § 7–3.1(a) (McKinney 1992). This rule is over two hundred years old. It flows from the proposition "that a person may not avoid his creditors (or his future creditors) by placing his property in trust for his own benefit." M. Turano, Practice Commentaries, at 322, Book 17B, EPTL 6–1.1 to 10–10.8 (McKinney 1992). Further, the proscription against self-created trusts applies without regard to fraud or other wrongdoing. *Id.; Vanderbilt Credit Corp. v. Chase Manhattan Bank, N.A.*, 100 A.D.2d 544, 546, 473 N.Y.S.2d 242, 245 (2d Dep't 1984). CPLR § 5205(c)(1) furthers this policy by subjecting self-created

---

7. In *In re Mastowski*, 135 B.R. 1 (Bankr. W.D.N.Y.1992), the bankruptcy court ruled that the homestead exemption applied to the interest of a vendee under a land contract who resided in a dwelling located on the property. The court reasoned that under land sale contracts, the buyer receives the immediate right to possession and enjoyment of the land, and that land sale contracts are similar to, and treated as, mortgages.

*Id.* The words of New York homestead provision, however, do not support its extension to the interests of a contract vendee, and the case does not discuss or cite authority supporting its application. In this regard, it is not the province of the bankruptcy court to legislate a homestead exemption for non-homeowner debtors. *In re Miller*, 103 B.R. at 68.

trusts to the claims asserted by the creditors of the creator/beneficiary.[8]

The Debtor's interest resembles a self-created trust. The Debtor "funded" the trust by borrowing money from Citibank or using her own funds, and "investing" them in Condo Unit 26–A, thereby creating the beneficial interest that she now seeks to shield.[9] Accepting the Debtor's theory, the trust created under the Contract of Sale places assets formerly available to her creditors[10] beyond their reach, but permits her to retain control and use of the property. This, however, is the evil that the statutory proscription against self-created trusts sought to eliminate. Accordingly, the Trustee's objection to this exemption is also sustained.

### b) The Shares in Apartment Locating, Inc.

What the Debtor cannot do directly, she attempts to do indirectly by seeking to exempt her stock in Apartment Locating, Inc. The Debtor owns 100% of the shares of Apartment Locating, and filed a Chapter 11 petition on its behalf in this Court in 1992. The Debtor alleges that Apartment Locating holds a real estate brokerage license, and that she conducts her brokerage activities through this corporate vehicle. Although the Debtor invokes the "tools of the trade" exemption, the timing of its belated assertion indicates that she raised it solely to protect the Condo Unit.

In January 1992, Judge Abram granted Citibank's motion for relief from the auto-matic stay to proceed to foreclose its mortgage in Condo Unit 26–A. *In re de Kleinman,* 136 B.R. 74. After Citibank obtained its judgment of foreclosure, and approximately one week before the Debtor filed the Apartment Locating petition, AIC entered into a long-term lease with Apartment Locating. The Debtor acted as attorney-in-fact for AIC and as an officer of Apartment Locating, thereby signing the lease as agent for both the landlord and the tenant. Consequently, Condo Unit 26–A purports to be encumbered by a lease held by a person that was not a party to the Citibank foreclosure proceeding.[11]

After the Court converted the Debtor's case in November 1993, the Trustee demanded that the Debtor turn over her shares in Apartment Locating together with her stock ledger book. The Debtor adamantly refused, and her continued refusal culminated in an order dated March 9, 1994, directing her, *inter alia,* to turn over the stock and ledger.[12] Five days later, she filed her amended exemption asserting, for the first time, that her Apartment Locating stock was protected as a "tool of the trade."

CPLR § 5205(a)(7) contains New York's "tools of the trade" exemption. It exempts the following:

> necessary working tools and implements, including those of a mechanic, farm machinery, team, professional instruments, furniture and library, not exceeding six

---

8. In 1989, the legislature enacted a series of amendments to carve out certain qualified self-created pension plans, such as Keogh plans, from this proscription. *See, e.g.,* CPLR § 5205(c)(2); EPTL § 7–3.1(b)(1). These amendments do not apply to or protect the Debtor's beneficial interest in Condo Unit 26–A.

9. The Debtor also holds a power of attorney from AIC which grants her control over its legal interest, thereby enabling her to control the legal and beneficial interests in Condo Unit 26–A. As discussed in the succeeding text, she relied upon this power of attorney to grant Apartment Locating a long term lease in order to frustrate Citibank's foreclosure of its mortgage in the unit.

10. The creditors' rights are subordinate to the Citibank mortgage, and hence, they do not receive a windfall; they can satisfy their claims

only out of the Debtor's equity created with the unencumbered funds that she invested in the unit.

11. The Debtor, the holder of the beneficial interest, did not execute the lease individually. AIC holds only bare legal title, and that is all it could have "leased" to Apartment Locating. Whatever interests the Debtor had in Condo Unit 26–A, including any possessory rights, remain unaffected, and hence, the extent and scope of Apartment Locating's interests in the unit are far from clear although they appear to be inconsequential.

12. The Debtor willfully disobeyed the March 9 order, and upon the Trustee's motion, this Court cited her for civil contempt on July 15, 1994.

hundred dollars in value, together with the necessary food for the team for sixty days, provided, however, that the articles specified in this paragraph are necessary to the carrying on of the judgment debtor's profession or calling.

The exemption consists of two requirements: the property must be a "working tool" or an "implement", and it must be necessary to carrying on the debtor's profession or calling. *Thorpe Electrical Supply, Inc. v. Deitz*, 104 Misc.2d 994, 995, 429 N.Y.S.2d 386, 387 (Albany Co.Ct.1980). The Debtor's exemption claim implies that Apartment Locating holds a real estate broker's license but the Debtor does not, and the Debtor carries on her brokerage business by relying upon her ownership and control of Apartment Locating to exploit its broker's license.[13]

New York case law sheds little light on the scope or meaning of this provision, but the Court can look to similar provisions in other jurisdictions to aid its interpretation. *See In re Parrotte*, 22 F.3d 472, 474 (2d Cir.1994). Further, where the legislature neither defines "tools of the trade" nor indicates an intention to limit the type of property that qualifies, a court should look to the function or use of the property to determine if it is a "tool of the trade." *Id.* at 475.

An "implement" is a " 'tool or utensil forming part of equipment for work' ", *In re Allman*, 58 B.R. 790, 792 n. 5 (Bankr.C.D.Ill. 1986) (quoting *Webster's Third New International Dictionary* ("*Webster's*") 1134 (3d unabridged ed. 1981)), and a "tool" is " 'an instrument used or worked by hand.' " *In re Allman*, 58 B.R. at 792 n. 5 (quoting *Webster's* at 2421). A "tool of the trade" must be

corporeal, *see Pickett v. Miller*, 329 So.2d 816, 817 (La.Ct.App.1976) ("an incorporeal leasehold interest is not included within the term 'tools, instruments and books' "), and must actually be used to produce a good or service. *See In re Frierson*, 15 B.R. 157, 159 (Bankr.D.Kan.1981) (bank account of sole proprietorship not exempt as tool of the trade because, although indispensable, is not used in the production of a result). To be necessary, the tool or implement need not be absolutely necessary; "it is enough that is reasonably necessary or convenient or suitable for the prosecution of the claimant's work or business advantageously and usefully." 59 N.Y.Jur.2d, *Exemptions* § 15, at 18 (1987) (footnote omitted); *accord In re Frierson*, 15 B.R. at 159; *In re Siegmann*, 757 P.2d 820, 822 (Okla.Sup.Ct.1988).

The Debtor's belated invocation of this exemption raises a novel and apparently untested issue: can an individual judgment debtor who carries on her business through a corporate vehicle exempt her shares in the corporation as a "tool of the trade?" The answer is negative. The Debtor does not use the Apartment Locating stock to broker real estate deals. Instead, she exploits the Apartment Locating brokerage license—an asset of Apartment Locating—through her ownership of that stock. The stock confers a bundle of incorporeal rights on the Debtor to manage and control Apartment Locating, but the stock itself plays no role in the real estate transaction. Consequently, it is neither a "tool" nor an "implement", and is not reasonably necessary to carrying on her business as a real estate broker. The Court concludes, therefore, that the Debtor's shares in Apartment Locating are not exempt,[14] and sustains the Trustee's objection.

### c) Motor Vehicle

The Debtor asserts an exemption in the amount of $5,000.00 for her motor vehicle, a

---

13. The record contradicts this implication. Judge Abram has already found that the Debtor is, herself, a licensed real estate broker. *In re de Kleinman*, 136 B.R. 69, 70 (Bankr.S.D.N.Y. 1991); *In re de Kleinman*, 136 B.R. at 74. In addition, in her Designation of Contents of Record on Appeal and Statement of Issues, dated February 3, 1992, apparently submitted in connection with her appeal from the Court's order granting Citibank relief from the automatic stay, the Debtor states, at page 8, that she is "a li-

censed real estate broker." Further, in order to broker real estate transactions in New York, the Debtor must hold a real estate license either individually or as a member of a corporation. N.Y.Real Prop.Law § 440–a (McKinney 1989).

14. Even if the Apartment Locating shares are exempt, the exemption would be limited under CPLR § 5205(a)(7) to not more than $600.00 in value.

1989 Grand Voyager/Plymouth. Debtor & Creditor Law § 282(1) limits the motor vehicle exemption to $2,400.00 in value, exclusive of liens. The Trustee's objection is, therefore, overruled to the extent of $2,400.00 of value (exclusive of liens), and sustained as to any value exceeding that amount.

### d) Post–Petition Personal Service Earnings

The Trustee's objection to the Debtor's claimed exemption for post-petition personal service earnings is denied as moot because such earnings are excluded from the definition of property of the estate. 11 U.S.C. § 541(a)(6). By claiming this exemption, the Debtor "has put the cart before the horse. Before an exemption can be claimed, it must be estate property." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir.1993). Despite the Debtor's mistaken invocation of the exemption, the property is nevertheless unavailable to the Trustee.

### e) Household Insurance Claim

CPLR § 5205(b) exempts causes of action and damages relating to injuries to personal property to the extent the property would have been exempt. The Debtor seeks to exempt a litigation claim, apparently asserted under an insurance policy, for damage occurring in January 1989 to household contents located in Bedford Hills, New York. The Debtor contends, however, that she assigned this claim to her daughter, Sabrina Kleinman, who is also a chapter 11 debtor in this Court.

The law precludes the Debtor from exempting this cause of action. The transfer of property to a third party constitutes a waiver of any exemption claim in that property that might otherwise exist. *Goldberg v. Torell (In re Rundlett)*, 149 B.R. 353, 358 (Bankr. S.D.N.Y.1993); *Warsco v. Ryan (In re Richards)*, 92 B.R. 369, 372 (Bankr.N.D.Ind.1988); *cf.* 11 U.S.C. § 522(g) (debtor cannot exempt property recovered by trustee under, *inter alia*, 11 U.S.C. § 550 if the debtor had voluntarily transferred the property). Consequently, the Trustee's objection to this exemption claim is sustained.

### f) Jewelry

The Trustee's objection to the Debtor's exemption regarding her wedding ring is overruled, but the ruling on her exemption for a watch is deferred, along with the other exemption claims discussed immediately below, pending the submission of information that identifies the watch and discloses its value. CPLR § 5205(a)(6) exempts "a wedding ring; a watch not exceeding thirty-five dollars in value." The dollar limitation only applies to the watch; a wedding ring, like the family bible and church pew, is exempt without regard to value. 59 N.Y.Jur.2d, *Exemptions* § 13, at 17 and n. 61; *see In re DeMartini*, 414 F.Supp. 69, 70 (S.D.N.Y.1976) ($35.00 limitation applies to watches); *Tickner v. Allen (In re Allen)*, 3 B.R. 355, 360 (Bankr.W.D.N.Y.1980) (upholding exemption under CPLR § 5205 of diamond wedding ring valued at $750.00); *contra In re Pearl*, 28 B.R. at 493 (sustaining creditor's objection to exemption of joint debtors' wedding rings under CPLR § 5205 because the debtors failed to provide evidence of their value). Thus, while a wedding ring is completely exempt, a watch is not, and the Court will require the Debtor to identify the watch she intends to exempt before ruling on the Trustee's objection.

### 3. *The Remaining Objections*

The Trustee's objections to the following exemptions are sustained unless the Debtor provides sufficient information, within 30 days, to enable the Trustee to determine whether and to what extent the New York bankruptcy exemptions apply to this property.

### a) Security Deposits

CPLR § 5205(g) exempts security deposits relating to the rental of real property used by the judgment debtor or her family as a residence, and utility deposits for services to be provided to the residence of the debtor or her family. Added in 1978, this exemption codifies prior law and protects the property until the deposit is returned to the debtor; once returned, it is available to her creditors.

D. Siegel, Practice Commentaries C5205:1, at 39–40, Book 7B, CPLR 5101 to 5500 (Supp. 1994).

The Debtor's amended schedules list deposits totaling $22,493.97; some appear to be landlord or utility deposits although that does not necessarily mean they are exempt. The other deposits do not appear to qualify for any exemption. In any event, the Debtor's submissions lack sufficient specificity to decide the matter.

### b) Personal Furniture and Clothing

The Debtor also asserts an exemption for her clothing, which she values at $1,000.00, and her furniture, which she values at $10,-000.00. CPLR § 5205(a)(5) exempts

> all wearing apparel, household furniture, one mechanical, gas or electric refrigerator, one radio receiver, one television set, crockery, tableware, and cooking utensils necessary for the judgment debtor and the family.

Under Section 283(1) of the Debtor & Creditor Law, the value of the property exempt under CPLR § 5205(a)(5) cannot exceed $5,000.00. The Debtor's schedules assert an exemption that exceeds this limit. Hence, even if all of her furniture and clothing is the *type* of property covered by this exemption, the Debtor cannot shield all of it. Further, without further clarification, it is not possible for the Trustee to determine, in the first instance, if the Debtor's furniture and clothing is actually qualified, *i.e.*, CPLR § 5205(a)(5)–type property.

### c) Disability Benefits Claim

According to the August 1991 amendment to her schedules, the Debtor claims an exemption in a cause of action against Equitable Life Assurance Co. ("Equitable"), concerning a disability claim for lost income, apparently arising in 1987 and 1988. The corresponding amendment to her Statement of Financial Affairs refers to a $60,000.00 disability income claim that is the subject of a lawsuit against Equitable.

Parsing exemption claims concerning lost income disability payments is like hacking one's way through a thicket. For example, New York Insurance Law § 3212, incorporated into the New York bankruptcy exemptions by Debtor & Creditor Law § 282, completely exempts benefits payable under a disability insurance policy, Insurance Law § 3212(c)(1), but limits the exemption for "any income payment benefits payable as a result of any disability of the insured." *Id.* § 3212(c)(2). New York case law does not illuminate this distinction.

The specifically enacted New York bankruptcy exemptions create similar confusion. Debtor & Creditor Law § 282(2), which corresponds to 11 U.S.C. § 522(d)(10), exempts a debtor's right to receive "(c) a disability, illness, or unemployment benefit." Debtor & Creditor Law § 282(3), based on 11 U.S.C. § 522(d)(11)(E), limits a debtor's exemption to the right to receive property "traceable to . . . (iv) a payment in compensation of loss of future earnings of the debtor . . . to the extent reasonably necessary for the support of the debtor."

New York courts have not interpreted these specific bankruptcy exemptions, but other bankruptcy courts have pondered the Bankruptcy Code's counterparts. The majority conclude that the more limited lost income exemption contained in § 522(d)(11)(E)—which depends on a showing of need—applies solely to the right to receive payments for lost future earnings that arises out of liability based on tort; on the other hand, § 522(d)(10)(C), covers payments due under a contract or by virtue of a state or federally enacted compensation program.[15] *E.g., In re Haynes*, 146 B.R. 779, 781 (Bankr.S.D.Ill.1992) (Illinois exemption statute derived from 11 U.S.C.

---

**15.** The distinction may be justified by the experience that contractual or governmental disability awards or benefits are generally employment-related, based upon a percentage of the debtor's income, and hence, presumptively necessary for support, *see In re Evans*, 29 B.R. at 338, but tort recoveries frequently exceed the amount reasonably necessary for support. *See In re La Belle*, 18 B.R. 169, 170 (Bankr.D.Me.1982).

§ 522(d)(10)(C), which fully exempts "disability," does not apply to personal injury settlement); *In re Cain,* 91 B.R. 182, 183 (Bankr. N.D.Ga.1988) (Georgia exemption statute identical to 11 U.S.C. § 522 exempts workers' compensation award under Georgia equivalent of § 522(d)(10)(C) because payments are not compensation for losses, as in tort actions, but are disability benefits akin to future earnings); *In re Albrecht,* 89 B.R. 859, 861 (Bankr.D.Mont.1988) (award under the Federal Employers' Liability Act, like workers' compensation, is fully exempt under § 522(d)(10)(C)); *Casarow v. Evans (In re Evans),* 29 B.R. 336, 338–39 (Bankr.D.N.J. 1983) (workers' compensation awards are created by the legislature outside of general tort law, and are exempt under § 522(d)(10)(C)); *In re La Belle,* 18 B.R. 169, 171 (Bankr.D.Me.1982) (a workers' compensation award does not compensate for losses like tort actions, and the award is exempt under § 522(d)(10)(C)); *see In re Buchholz,* 144 B.R. 443, 445–46 (Bankr.N.D.Iowa 1992) ("benefits", as used by lawmakers, is limited to contractual entitlements, not tort recoveries); *see generally* 2 W. Norton, *Norton Bankruptcy Law & Procedure* § 26.21 (1993) ("The apparent intent [of § 522(d)(10)(C) ] is to exempt temporary contractual benefits, most of which will arise from the debtor's employment"); *but see In re Lambert,* 9 B.R. 799, 800–01 (Bankr.W.D.Mich.1981) (accrued workers' compensation benefits are exempt under § 522(d)(10)(C), but prospective benefits are only exempt under § 522(d)(11)(E)).

The Debtor's schedules and Statement of Financial Affairs do not provide sufficient information to decide her exemption claim based on disability, and she has refused to provide information that would amplify it. The Court cannot determine if the claim arises under a disability or other insurance contract, arises under a workers' compensation or similar work injury statute or constitutes a tort claim which arose because of some personal injury that the Debtor suffered as a result of Equitable's negligence.

Accordingly, the Court will allow the Debtor 30 additional days, from the date of the entry of the order to be settled in conformity with this opinion, to submit an affidavit which provides sufficient detail to determine whether and to what extent she is entitled to any exemptions on account of a watch, security deposits, clothing, furniture or her disability claim. If she fails to do so, and the Trustee so certifies in an affidavit submitted to the Court, the Trustee may, at the same time, submit an order, on three days notice, striking these remaining exemptions.

The Court has considered the Debtor's remaining arguments, and has concluded that they lack merit.